NO. 22-2015 _____

In The

# United States Court of Appeals
### For The Fourth Circuit

Jimmie Lucas; Clarence Wilson

Plaintiffs - Appellants

v.

United Parcel Service, Inc.

Defendant - Appellee

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE  DISTRICT OF SOUTH CAROLINA          AT COLUMBIA DIVISION

―――――――――――

BRIEF OF PLAINTIFFS-APPELLANTS

―――――――――――

Shannon Polvi (Fed. ID No. 11978)
Cromer Babb Porter & Hicks, LLC
1418 Laurel Street, Suite A
Columbia, South Carolina 29201
(803) 799-9530
shannon@cbphlaw.com

Counsel for Plaintiffs - Appellants

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ………………………………………………………...I

TABLE OF AUTHORITIES …………………………………………………II

STATEMENT OF JURISDICTION ………………………………………….....1

STATEMENT OF THE ISSUES ……………………………………………….2

STATEMENT OF THE CASE …………………………………………...….2

STATEMENT OF THE FACTS …………………………………………… 3

SUMMARY OF THE ARGUMENT …………………………………….......7

STANDARD OF REVIEW ………………………………………….......7

    I.    Federal Rule of Civil Procedure 12(b)(1)………………………….7

    II.    Federal Rule of Civil Procedure 12(b)(6)………………………….9

    III.    Federal Rule of Civil Procedure 12(c)…………………………..10

ARGUMENT………………………………………………………...10

    I.    The District Court erred in dismissing the Appellants' claims under the Fair Labor Standards Act………………………………..…………....10

        A. The facts of *Barrentine* are nearly identical to the facts of this case….11

        B. The Supreme Court held that Appellants have a statutory right to a de novo review of an FLSA claim, irrespective of prior arbitration proceedings.……………………………………………...…12

        C. The union arbitration findings have no bearing on the Appellants' rights protected by the anti-retaliation provisions of the FLSA…………..…19

CONCLUSION ……………………………………………………...21

REQUEST FOR ORAL ARGUMENT ……………………………………...22

CERTIFICATE OF SERVICE …………………………………………….23

CERTIFICATE OF COMPLIANCE ………………………………………….23

CERTIFICATE OF TYPE SIZE AND STYLE …………………………………23

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Alexander v. Gardner- Denver Co.,* 415 US 36 (1974)…………………………15,18

*Ali v. Hogan*, 26 F.4th 587 (4th Cir. 2022)………………………………………..8

*Arbaugh v. Y&H Corp*., 546 U.S. 500 (2006)……………………………………8

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)………………………………………...……9

*Barrentine v. Arkansas-Best Freight System, Inc.,* 450 US 728 (1981)……….passim

*Bass v. Weinstein Mgmt. Co*., 56 F.4th 355 (4th Cir. 2022)………………..…10

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)………………………9

*Bell v. Hood*, 327 U.S. 678 (1946)……………………………………….…8

*Bell v. Se. Pennsylvania Transp. Auth,* 733 F.3d 490 (3rd Cir. 2013)……………...18

*Butler v. United States,* 702 F.3d 749 (4th Cir. 2012)………………………...10

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999)………………....10

*Holloway v. Maryland*, 32 F.4th 293 (4th Cir. 2022)………………………….…9

*Katsen v. Saint-Gobain Performance Plastics Corp*., 563 U.S. 1 (2011)………..…20

*Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009)………………………….…8

*Massey v. Ojaniit,* 759 F.3d 343 (4th Cir. 2014)…………………………………...10

*Minor v. Bostwick Lab'ys, Inc.,* 699 F.3d 428 (4th Cir. 2012)…………………..20

*Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447 (4th Cir. 2017)……………..…8

*N. Carolina Ins. Guar. Ass'n v. Becerra*, 55 F.4th 428 (4th Cir. 2022)……………...8

*Revene v. Charles County Comm'rs,* 882 F.2d 870 (4th Cir. 1989)……………....8

*Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765 (4th Cir. 1991)……………………………………………………………....7,8

*Sanchez v. Arlington Cnty. Sch. Bd.,* No. 21-2245, 2023 WL 310403 (4th Cir. Jan. 18, 2023) ………………..……..................................................................9

*Shultz v. Dept. of the Army,* 886 F.2d 1157 (9th Cir.1989)………………………....8

**Statutes**

28 U.S.C. § 1291 ………………………………………………………...1

28 U.S.C. § 1331 ………………………………………………………...1

28 U.S.C. § 1367………………………………………………………....1

28 U.S.C. § 1441………………………………………………………....1

29 U.S.C. § 201 *et seq*………………………………………………..…..passim

29 U.S.C. § 215…………………………………………………...2,19,20,21

29 U.S.C. § 216(b). ………………………………………………………..15

S.C. Code Ann. § 41-10-10, *et seq*………………………………………………..2

**Rules**

Fed. R. App. P. 32 …………………………………………………………23

Fed. R. Civ. P. 12 …………………………………………………………..passim

## <u>STATEMENT OF JURISDICTION</u>

The District Court had jurisdiction of this case that is docketed as C.A. No. 3:21-cv-02328-SAL pursuant to 28 U.S.C. § 1331 following its removal to federal court pursuant to 28 U.S.C. § 1441. The District Court's federal question jurisdiction was based on Appellants' claim arising under the Fair Labor Standards Act, 29 U.S.C. § 201. The District Court had supplemental jurisdiction over Appellants' state law claims pursuant to 28 U.S.C. § 1367.

The Court of Appeals has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291. The final judgement that is being appealed from disposed of all issues in this case and was entered on September 4, 2022. No motion for a new trial or alteration of the judgement or any other motion that would have tolled the time to appeal was filed. The Notice of Appeal was filed on September 27, 2022. This is not an appeal from a decision of a magistrate judge.

## STATEMENT OF THE ISSUES[1]

I.    Whether the District Court erred in dismissing the Appellants' claims under the Fair Labor Standards Act?

## STATEMENT OF THE CASE

On June 30, 2021, Jimmie Lucas and Clarence Wilson ("Appellants") filed this action in the Eleventh Judicial Circuit of the Court of Common Pleas for the State of South Carolina. Appellants brought claims of (1) Violation of the Fair Labor Standards Act- Failure to Pay Overtime Wages, 29 U.S.C. § 201 *et seq*., (2) Violation of the Fair Labor Standards Act - Section 15(a)(3) Retaliation, (3) South Carolina Payment of Wages Act Violations, S.C. Code Ann. § 41-10-10, et seq., and (4) Promissory Estoppel, and (5) Quantum Meruit. (JA144).

On July 28, 2021, the United Parcel Service, Inc. ("Respondent") removed this action to the United States District Court, District of South Carolina, Columbia Division. (JA144). Respondent filed an Answer to Appellants' Complaint on August 25, 2021. (JA032-43). Respondent filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), on November 9, 2021, seeking to dismiss all of

---

[1] While Appellants maintain strong disagreement with the District Court's determination as to other issues and other claims, out of respect for this Court's time and in an attempt to focus arguments on what Appellants contend is a clear and wrongful deviation from the Supreme Court's binding precedent, Appellants have chosen to limit the subject of the instant appeal to the two FLSA causes of action. Appellants are not pursuing an appeal of the District Court's dismissal of the three state law causes of action.

Appellants' claims. (JA044). On September 4, 2022, the District Court entered an Order granting Respondent's Motion to Dismiss therein referencing Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(c), thereby dismissing all claims. (JA174-195). On September 27, 2022, Appellants filed a Notice of Appeal and initiated the current action before this Court. (JA196).

## STATEMENT OF THE FACTS

Appellants are long term employees of Respondent, with decades of experience. (JA022 ¶ 8). Appellants are drivers for Respondent. (JA022 ¶ 7).

Respondent engaged in a pattern and practice of not paying its drivers at the 124 Creekside, Road, West Columbia, South Carolina 29172 location for all time worked. (JA022 ¶ 9). Respondent failed to pay Appellants, and their peers, for all work time, resulting in unpaid overtime due to the Appellants. (JA022 ¶¶ 10, 29-32). The scope of unpaid work time at issue is (1) the drivers' start work time, which includes the first half hour of each workday with duties including building the loads and pre-staging the loads that will be delivered by the drivers, and (2) the conclusion of work time when the drivers return to the facility and are required to perform an end of shift work routine, including completion of the mileage sheet and turning it in to the dispatch office, which is required daily. (Id.). Respondent still requires the Appellants to punch in with a timeclock and perform services for the benefit of

3

Respondent and yet not pay Appellants wages for those mandatory duties. (JA022 ¶ 11).

Appellants are union members with the International Brotherhood of Teamsters, Local Chapter 509. (JA022 ¶ 13). Appellants have exhausted their rights under their collective bargaining agreement, including but not limited to a deadlocked national panel between March 9-12, 2020. (JA022 ¶ 14). Appellants have each filed over 83 separate grievances a piece, seeking correct wage payment. (JA023 ¶ 15).

After one of those grievances, on February 26, 2019, the labor manager stated that he did not know why Appellants were grieving the unpaid wages because Respondent was purportedly paying Appellants correctly at that time. (JA023 ¶ 16). For a brief time, around that time, Respondent issued correct paychecks. (Id.). Respondent then regressed to not paying wages for the required and compensable worktime. (Id.).

Without the benefit of all of the documentation yet available to them for calculation purposes, at the time the Complaint was filed, Appellant Jimmie Lucas calculated his base shortage number at $12,929.60 and Appellant Clarence Wilson calculated his base shortage number at $15,220.55. (JA023 ¶ 17). There are at least five other employees at Appellants' workplace that have suffered similar unpaid wage damages.  (JA023 ¶ 18).

4

Respondent's managers and representatives repeatedly threatened both Appellants with demands that they cease seeking proper wage payment. (JA023 ¶ 19). Both Appellants have suffered retaliatory conduct with regard to adverse changes to their work schedule and leave time. (JA023 ¶ 20).

On May 18, 2021, Appellants were called into the office in the morning, and both were issued a warning letter by supervisor, Haven Holmes, per instruction from Jimmy Forback, Feeder Manager, for putting the entries of the time they were working on the clock on their mileage sheets to be paid for the time worked for the benefit of the Respondent. Appellants were told not to put anything down for the first 30 minutes of work time and they were told that load and unload duties would continue to be unpaid. (JA023 ¶ 21). Appellants also received the warning letters in the mail in the following days. (Id.).

On May 19, 2021, Appellants were again called into the office in the morning, and both were issued a 3-day suspension for documenting the time they worked. (JA024 ¶ 22). Appellant Jimmie Lucas asked when the suspension was effective, and Haven Holmes said it was to be determined. (Id.). Again, this suspension was issued per instructions from Jimmy Forback. (Id.).

On May 25, 2021, Appellants were again called into the office in the morning and Appellants were told that they were terminated. (JA024 ¶ 23). Appellant Jimmie Lucas again asked when the adverse employment action was effective and again he

was told it was to be determined. (Id.). Appellants both agreed to follow instructions to not document their work time in order to keep from being terminated for insubordination or not following instructions about their paychecks. (Id.). Appellants continued to keep records on a separate sheet and put only what they were allowed to document on the sheets that they turned in because of the express ultimatum that if they turned in the payroll documentation reflecting overtime, to which they were owed, they would be fired. (Id.).

Appellants met with Jimmy Forback the following morning. (JA024 ¶ 24). Appellant Jimmie Lucas asked what was going on with the working terminations and Jimmy Forback responded that if Appellants followed instructions and stopped putting the entries of when they were working on the Respondent's documentation then everything would be just fine. (Id.). Appellants agreed that they would not write their overtime on their sheets submitted to Respondent for payment, but they would continue to enter their work time in the electronic recording devices, and they would continue to grieve for correct pay. Appellants have done so since then but are aware that they are being watched closely. (Id.).

These discipline and termination threats have caused both Appellants emotional distress. (JA025 ¶ 26). Both fear that finalization of the 'working termination' is imminent. (Id.). Respondent's management is intentionally placing them in fear that if they seek payment for the overtime for which they are owed that

6

termination will be the result. (Id.). This emotional distress has impacted the Appellants' daily work environment, as well as their home lives. (Id.). Appellants have suffered sleepiness, anxiety for personal finances, and sadness. (Id.).

## SUMMARY OF THE ARGUMENT

The District Court has misapplied the binding precedent set forth in *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 US 728 (1981). In doing so, Appellants are deprived of their rights protected by the Fair Labor Standards Act ("FLSA"). While acknowledging that the Appellants may bring an FLSA action due to *Barrentine,* the District Court simultaneously dismissed the Appellants' FLSA claims by finding that the Court is bound by the arbitration panel's decision that Appellant was not owed additional compensation. The District Court's decision stands in direct opposition to the United States Supreme Court's holding, logic, and intent in *Barrentine.* The *Barrentine* Court clearly set forth that individual plaintiffs are to be given a full opportunity to litigate their FLSA claims irrespective of an arbitrator's determination. Thus, the District Court has gravely erred, and its decision should be overturned.

## STANDARD OF REVIEW

### I.     Federal Rule of Civil Procedure 12(b)(1)

Dismissal under Federal Rule of Civil Procedure 12(b)(1) examines whether the pleading fails to state facts upon which jurisdiction can be founded. *Richmond,*

*Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). An objection, pursuant to Federal Rule of Civil Procedure 12(b)(1), that a federal court lacks subject-matter jurisdiction, may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Where jurisdictional facts and the facts central to the case are inextricably intertwined, the Supreme Court has explained, a trial court should dismiss under Rule 12(b)(1) only when the jurisdictional allegations are "clearly ... immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009)(quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946).

"A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to *de novo* appellate review." *Richmond, Fredericksburg & Potomac R. Co.,* 945 F.2d at 768–69 (citing *Revene v. Charles County Comm'rs,* 882 F.2d 870, 872 (4th Cir.1989); *Shultz v. Dept. of the Army,* 886 F.2d 1157, 1159 (9th Cir.1989)); see also *N. Carolina Ins. Guar. Ass'n v. Becerra*, 55 F.4th 428, 433 (4th Cir. 2022)(citing *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017); *Ali v. Hogan*, 26 F.4th 587, 595 (4th Cir. 2022)).

## II.     Federal Rule of Civil Procedure 12(b)(6)

This Court conducts a *de novo* review of a district court's dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Sanchez v. Arlington Cnty. Sch. Bd.,* No. 21-2245, 2023 WL 310403, at *3 (4th Cir. Jan. 18, 2023) (citing *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff[s] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly,* 550 U.S. at 557).  At the motion to dismiss stage, a court should accept as true all well-pled facts in the complaint and construe them in the light most favorable to the plaintiffs. *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n. 1 (4th Cir. 2015); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

### III.    Federal Rule of Civil Procedure 12(c)

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard of review as a Rule 12(b)(6) motion to dismiss." *Bass v. Weinstein Mgmt. Co*., 56 F.4th 355, 360 (4th Cir. 2022)(citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). This Court conducts a *de novo* review applying the standard for a Rule 12(b)(6) motion. *Massey v. Ojaniit,* 759 F.3d 343, 353 (4th Cir. 2014)(citing *Butler v. United States,* 702 F.3d 749, 751–52 (4th Cir. 2012). In so doing, "[a] Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Bass,* 56 F.4th at 360(quoting *Drager v. PLIVA USA, Inc.,* 741 F.3d 470, 474 (4th Cir. 2014).

## ARGUMENT

### I.    The District Court erred in dismissing the Appellants' claims under the Fair Labor Standards Act.

The District Court denied Appellants the opportunity to litigate their FLSA claims by declining to apply the established precedent set forth by the Supreme Court in *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 US 728 (1981). While the District Court acknowledges that *Barrentine* gives the District Court jurisdiction to hear Appellants' FLSA claims, the District Court nevertheless denies Appellants any opportunity to litigate the claims by finding, without any supporting precedent, that the District Court is bound by the arbitrator's determination on the

issue. (JA186) ("they clearly indicate a rehashing of the same arguments rejected by the arbitrator in his decision … this court is bound by the arbitrator's decision on this issue, and he ruled Plaintiffs are paid for this work."). However, in the context of the FLSA, the Supreme Court has clearly articulated that the decision of the arbitrator is not determinative or binding.[2] *Barrentine,* 450 US 728.

**A. The facts of *Barrentine* are nearly identical to the facts of this case.**

The *Barrentine* plaintiffs were truck drivers required to perform pre-drive inspections and maintenance on their vehicles. *Barrentine,* 450 US at 730. The *Barrentine* plaintiffs are ordinarily compensated at an hourly rate, but were not allowed to be "on the clock" while performing some of these pre-trip duties. *Id.* Similarly, Appellants in this case are truck drivers required to perform pre-drive and post-drive maintenance on their vehicles. (JA007 ¶¶9-11). Appellants, like the *Barrentine* plaintiffs, are ordinarily compensated at an hourly rate, but are not allowed to be "on the clock" while performing their pre- and post- trip duties. (Id.).

In *Barrentine,* the plaintiffs were members of the International Brotherhood of Teamsters. *Barrentine,* 450 US at 730-31. The *Barrentine* plaintiffs submitted a

---

[2] Plaintiffs further contest the District Court's that the arbitrator even made a determination that can be applied to an FLSA claim. No such finding is in the record. The arbitrator was solely reviewing the actions within the narrow lens of reviewing the collective bargaining agreement, not whether Respondent violated the FLSA. Nevertheless, under the *Barrentine* precedent, Plaintiff would still be entitled to *de novo* review, even if such an FLSA determination had been made by the arbitrator.

series of grievance claims for their unpaid time using the mechanism set forth in their collective bargaining agreement. *Id.* Ultimately, a grievance committee rejected their claims. *Id.* Likewise, Appellants are members of the International Brotherhood of Teamsters. (JA007 ¶ 13). Appellants submitted a series of grievance claims for their unpaid time using the mechanism set forth in their collective bargaining agreement. (JA007 ¶ 14-15). Appellants, like in *Barrentine*, had their grievances rejected by an arbitration panel. (JA007 ¶ 14).

Appellants, just like the *Barrentine* plaintiffs, then filed a claim under the FLSA for unpaid wages in a United States District Court. *Barrentine,* 450 US 731-33; (JA006-10). Like in this case, the District Court in *Barrentine,* determined that the plaintiffs were stuck with the decision of the grievance committee, and that the District Court could not disturb such decision given the existence of a collective bargaining agreement. *Barrentine,* 450 US at 734; (JA186).

## B. The Supreme Court held that Appellants have a statutory right to a *de novo* review of an FLSA claim, irrespective of prior arbitration proceedings.

The issue in *Barrentine,* as stated by Justice Brennan, is exactly the issue in this case:

> The issue in this case is whether an employee may bring an action in federal district court, alleging a violation of the minimum wage provision of the Fair Labor Standards Act, after having unsuccessfully submitted a wage claim based on the same underlying facts to a joint grievance committee pursuant to the provisions of his union's collective bargaining agreement.

12

*Barrentine,* 450 US at 729-30.  The language used by Justice Brennan in describing the issue in *Barrentine* is particularly informative as to the mistake made by the District Court in this case.

The crux of Appellants' FLSA overtime claim is the contention that pre- and post- drive duties must be compensated outside of the mileage rate.  The District Court, however, determined that it could not make a determination on such issue because "[t]he arbitrator ruled the mileage rate included the start and finish work, and this work is not separately compensable absent a side agreement.  Of course, this court is bound by that ruling as to that issue." (JA184).  Notably, the arbitrator's decision was reached as a result of contractual interpretation,[3] whereas Appellants contend they have a statutory right to compensation based on the FLSA, which exists irrespective of the collective bargaining agreement.  The District Court determined that it was bound to uphold and apply the arbitrator's contractual interpretation to the FLSA claim because it claimed that Appellants merely stated, "a rehashing of the same arguments rejected by the arbitrator."  (JA186).

Yet, in the *Barrentine* case, in which Justice Brennan acknowledged that the appellants had presented "the same underlying facts to a joint grievance committee,"

---

[3] The District Court even acknowledges in a separate section of its Order that Appellants' grievance concerned a contractual dispute "Plaintiff's grievances at arbitration centered around a dispute with the CBA's compensation provisions." (JA188).

13

a seven-to-two majority of the Supreme Court reversed the ruling of the lower courts and held that plaintiffs have an independent right to litigate their FLSA claim in District Court, with *de novo* review, regardless of the arbitration outcome. *Barrentine,* 450 US 728.

In coming to such a conclusion, the Supreme Court put forth compelling and strong reasoning that applies just as well in this case as it did in *Barrentine.* In fact, the *Barrentine* Court explicitly acknowledged the strong public policy merits of not disturbing the decisions of arbitrators when dealing with collectively bargained agreements for employment, but nevertheless concluded that the specific substantive rights guaranteed to individual employees prevails in a tension of two policies. *Id.* at 735. The Supreme Court found that:

> Not all disputes between an employee and his employer are suited for binding resolution in accordance with the procedures established by collective bargaining. While courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.

*Id.* at 737. Putting the same logic in reverse, *Barrentine* must stand for the proposition that when an employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers (such as the FLSA), courts *should not* defer to a union arbitration decision. In this case,

14

which presents such a scenario, the District Court did defer to a union arbitration decision, and the same amounts to reversible error.

The Supreme Court in *Barrentine* noted that this right to proceed irrespective of the arbitration result was first recognized in *Alexander v. Gardner- Denver Co.,* 415 US 36 (1974). *Barrentine,* 450 US at 738. There, the Supreme Court concluded that Title VII claims should be resolved by the courts *de novo,* irrespective of any prior arbitration or grievance proceeding. *Id.* The *de novo* requirement was imposed because the Supreme Court determined "contractual grievance and arbitration procedures provided an inadequate forum for enforcement of Title VII rights." *Id.*

Just as in *Gardner-Denver Co.,* the *Barrentine* Court concluded that contractual grievance and arbitration procedures do not provide an adequate forum for workers like Appellants to enforce their FLSA rights. The Supreme Court noted that the FLSA "statutory enforcement scheme grants individual employees *broad access* to the courts." *Id.* at 740 (emphasis added). The Court further identifies that the FLSA "permits an aggrieved employee to bring his statutory wage and hour claim 'in any Federal or State Court of competent jurisdiction.' No exhaustion requirement or other procedural barriers are set up an

d no other forum for enforcement of statutory rights is referred to or created by the statute." *Id.* quoting 29 U.S.C. § 216(b).

The reasoning behind guaranteeing employees a full and fair opportunity to present an FLSA claim irrespective of arbitration proceedings is as applicable here as it was in *Barrentine*. The *Barrentine* Court noted that while arbitrators may have their use in interpreting a collective bargaining agreement "the 'specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land.'" *Id.* at 743 citing *Gardner-Denver,* 415 US at 57; and *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 US at 581-82 (1960). The *Barrentine* Court wisely considered that "many arbitrators may not be conversant with the public law consideration underlying the FLSA." *Id.* at 743.

Beyond potential arbitrator competence, however, the *Barrentine* has also noted a clear and present danger that also exists in this case: the reality that an arbitrator's interpretation of a collective bargaining agreement, although concerning the same underlying dispute, may not result in the same ultimate finding as would happen in a court of law, because an arbitrator's mission is to enforce the statute, but rather to enforce the contract.

> Moreover, even though a particular arbitrator may be competent to interpret and apply statutory law, he many have the contractual authority to do so. And arbitrators power is both derived from, and limited by, the collective-bargaining agreement.
>
> …
>
> His tasks is limited to construing the meaning of the collective-bargaining agreement so as to effectuate the collective intent of the parties.

16

…

> Because the arbitrator is required to effectuate the intent of the parties, rather than to enforce the statute, he may issue a ruling that is inimical to the public policies underlying the FLSA, thus depriving an employee of protected statutory rights.

*Id.* at 744. This issue is present in this case.

The District Court in this case explicitly acknowledges that the arbitrator at issue made his ruling based upon the Article 43 Guidelines of the collective bargaining agreement. (JA186). Appellants collective bargaining agreement *did not* contract away their rights to bring claims under the FLSA, and the arbitrator did not make a ruling using FLSA law or considerations. Thus, the grievance process relevant to Appellants claim was not an adequate forum for Appellants to enforce their FLSA rights.

In determining that it had jurisdiction to hear the case, but no authority to act independently of the arbitrator, the District Court wrongfully attempted to draw a distinction between this case and *Barrentine,* where no actual difference exists. The *Barrentine* Court clearly intended for employees to receive independent, *de novo* review of their FLSA claims, regardless of any arbitration proceeding. Ultimately, in a nearly identical scenario, the Supreme Court, with a strong majority, concluded the following:

> In sum, **the FLSA rights petitioners seek to assert in this action are independent of the collective-bargaining process**. They devolve on

petitioners as individual workers, not as members of a collective organization. They are not waivable. Because Congress intended to give individual employees the right to bring their minimum-wage claims under the FLSA in court, and because these congressionally granted **FLSA rights are best protected in a judicial rather than in an arbitral forum**, we hold that petitioners' claim is not barred by the prior submission of their grievances to the contractual dispute-resolution procedures. As we stated in *Gardner-Denver*:

"In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under [the statute], an employee asserts independent statutory rights accorded by Congress. **The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.** And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums." 415 U.S., at 49–50, 94 S.Ct., at 1020–1021.

*Id.* at 745-46 (emphasis added)(quoting *Alexander,* 415 U.S. at 49-50; see also *Bell v. Se. Pennsylvania Transp. Auth,* 733 F.3d 490 (3rd Cir. 2013) ("An employee's right to relief under the FLSA, therefore, is distinct from an employee's contractual rights as provided in a collective bargaining agreement").

Given the same set of facts as *Barrentine,* the District Court should have reached the same conclusion, and allowed Appellants' FLSA claim to proceed into discovery, such that Appellants would have a full and fair opportunity to litigate and prove their case.  The District Court's failure to do so is a reversible error.

18

**C. The union arbitration findings have no bearing on the Appellants' rights protected by the anti-retaliation provisions of the FLSA.**

Appellants have a claim for unpaid overtime and a claim for violation of Section 15(a)(3) of the FLSA, which prohibits retaliation for FLSA protected activities. (JA025-027). Here, the employer's adverse actions in violation of the FLSA are even worse than in *Barrentine*. Here, there is also retaliation in violation of the FLSA.

In dismissing the FLSA retaliation claim, the District Court erred by finding that the "Plaintiffs fail to plausibly allege their union grievances constituted protected activity under FLSA." (JA187). Section 15(a)(3) of the FLSA provides in pertinent part that an employer shall not "discharge or in any other matter discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act." 29 U.S.C. § 215(a)(3). The pleadings articulate plausible facts showing unlawful retaliation in violation of the FLSA. (JA021-027).

The pleadings describe the adverse actions the drivers experienced after pursuing payment for their overtime. (JA021-027). Appellants' efforts to be paid overtime are clear and unambiguous. (Id.)(See i.e. ¶ 15 "Plaintiffs have each filed over 83 separate grievances a piece, seeking correct wage payment…", ¶ 21 which describes FLSA protected activities to management on May 18, 2021, ¶ 22 which describes FLSA protected activities to management on May 19, 2021, ¶ 23 which

19

describes FLSA protected activities to management on May 25, 2021, and ¶ 24 which describes FLSA protected activities to management on May 26, 2021). Thus, the Appellant's FLSA protected actions fall squarely into the purview of the very cases cited by the District Court. (JA187 citing *Minor v. Bostwick Lab'ys, Inc.,* 699 F.3d 428, 439 (4th Cir. 2012) (quoting *Katsen v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011))("Internal complaints may constitute protected activity so long as they are 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'").

Therefore, it is inexplicable that the District Court found that Appellant's numerous efforts to be paid overtime are not protected acts under the FLSA. (JA187-188); (See also JA022-027 ¶¶ 9, 10, 11, 14, 15, 19, 20, 21, 22, 23, 24, 25, 26, 37, 38, and 39). Paragraph 38 states, "Plaintiffs' actions in reporting the matters referred to herein and repeatedly filing grievances for unpaid overtime wages constitute protected activities under the FLSA and the resulting retaliatory treatment, including but not limited to harassment on the job, adverse scheduling, adverse leave request impacts, and threats of termination are caused by Plaintiffs' reports and actions taken in opposition to Defendant's efforts to ignore or reject their obligations under FLSA for the purpose of saving Defendant overtime wages that belong to its employees who have worked for and deserve that compensation." (JA026-027 ¶38). The

District Court erred by finding that the union arbitration determination also warranted dismissal of the Appellant's FLSA retaliation claim.

The Supreme Court's holding in *Barrentine* makes it clear that not only are arbitral procedures less protective of individual statutory rights than are judicial procedures, but also arbitrators very often are powerless to grant the aggrieved employees as broad a range of relief. *Barrentine,* 450 U.S. at 729. Under the FLSA, courts can award actual and liquidated damages, reasonable attorney's fees, and costs, whereas an arbitrator can award only that compensation authorized by the wage provisions of the collective-bargaining agreement. *Id.* Though the *Barrentine* decision did not involve an FLSA retaliation claim, the Supreme Court's holdings therein about the FLSA and the Supreme Court's analysis of the principal Congressional purpose of enacting the FLSA (*Barrentine*, 450 U.S. at 739) show that the District Court erred by dismissing the Appellants' FLSA retaliation claim.

## <u>CONCLUSION</u>

Based on the foregoing, Appellants respectfully request this Court review and REVERSE the portions of the District Court's Order dismissing the Appellants' FLSA claims.  Appellants further request that this Court remand this case to the District Court to further litigate the two claims for failure to pay overtime wages and retaliation that arise under the Fair Labor Standards Act.

21

## **REQUEST FOR ORAL ARGUMENT**

This appeal presents important questions of law. Appellants believe that oral argument would be helpful to the Court in deciding these questions.

Respectfully submitted,

CROMER BABB PORTER & HICKS, LLC

BY: _s/Shannon Polvi
　　　Shannon Polvi
　　　1418 Laurel Street, Suite A (29201)
　　　Post Office Box 11675
　　　Columbia, SC 29211
　　　Telephone: 803-799-9530
　　　Fax: 803-799-9533
　　　shannon@cbphlaw.com
　　*Attorney for Plaintiffs - Appellants*

Columbia, South Carolina
January 20, 2023

22

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing brief has been furnished to all counsel of record, by electronic filing using the CM/ECF system. All participants are registered CM/ECF users, and will be served electronically.

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(c) the undersigned counsel certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). This brief contains 4,944 words, excluding the parts of the brief exempted by Rule 32(f).

## CERTIFICATE OF TYPE SIZE AND STYLE

Counsel for Appellant certifies that the size and style of type used in this brief is 14-point Times New Roman.

CROMER BABB PORTER & HICKS, LLC


BY:___s/Shannon M. Polvi_____
  Shannon M. Polvi (Fed. ID No. 11978)
  1418 Laurel Street, Suite A (29201)
  Post Office Box 11675
  Columbia, South Carolina 29211
  Phone 803-799-9530
  Fax   803-799-9533
  *Attorney for Plaintiffs - Appellants*

January 20, 2023
Columbia, South Carolina